UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DOLOREAN THORNHILL,

      Petitioner,                            Civil Action No. 19-CV-12914

vs.

                                      HON. BERNARD A. FRIEDMAN

CONNIE HORTON,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

      Petitioner has filed this habeas case under 28 U.S.C. § 2254.  He was convicted after a jury trial in Wayne Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; first-degree home invasion, MICH. COMP. LAWS § 750.110a; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; and possession of a firearm during a felony, MICH. COMP. LAWS § 750.227b.  Petitioner was sentenced to 12-20 years for the assault conviction, two years for the firearm conviction, and lesser concurrent terms for the other offenses.

      The habeas petition raises thirty claims, summarized as follows:  (1) the prosecutor withheld impeachment information regarding the victim from the grand jury; (2) the prosecutor failed to disclose petitioner's actual innocence to the grand jury by way of the testimony of defense witnesses Mia Parker, Alicia Cook, and Shoton Merritt; (3) the prosecutor withheld exculpatory forensic evidence that the bullet recovered from the victim's leg did not match the bullet hole in the van from the grand jury; (4) the prosecutor withheld the evidence referred to in claim one at trial; (5) the prosecutor withheld the evidence referred to in claim two

at trial; (6) the prosecutor withheld the evidence referred to in claim three at trial; (7) the victim's trial testimony differed from her prior statements; (8) the prosecutor withheld medical evidence at trial that the victim was not shot while seated; (9) the trial court erred in admitting medical records at trial; (10) the prosecutor withheld forensic evidence that glass found by the road at the scene of the shooting did not come from the victim's vehicle; (11) the trial court erred in admitting the broken glass evidence; (12) the prosecutor withheld evidence regarding the lack of a match between the bullet recovered from the victim and the bullet hole in the victim's vehicle; (13) the prosecutor withheld medical testimony regarding the removal of the bullet from the victim's leg; (14) the trial court erred in admitting the recovered bullet into evidence; (15) the verdict went against the great weight of the evidence; (16) petitioner's convictions are offensive to the maintenance of a sound judicial process; (17) and (18) petitioner's sentences are excessively severe and disproportionate; (19) and (20) petitioner's minimum sentences were unconstitutionally based on facts not found beyond a reasonable doubt; (21) trial counsel was ineffective for failing to file a motion for directed verdict; (22) trial counsel was ineffective for failing to raise his first three claims before trial; (23) trial counsel was ineffective for failing to raise claims four through sixteen before sentencing; (24) trial counsel was ineffective for failing to raise claims seventeen and eighteen at sentencing; (25) trial counsel was ineffective for failing to challenge the constitutionality of Michigan's sentencing guidelines scheme; (26) the cumulative effect of claims one, four, and twenty to twenty-three deprived petitioner of a fair trial; (27) appellate counsel was ineffective for failing to raise claims one through twenty-six and twenty-eight on direct appeal; (28) the grand jury indictment should have been quashed because the amendment violated state law; (29) ineffective

2

assistance of appellate counsel is cause to excuse petitioner's procedural defaults; and (30) petitioner's confrontation rights were violated when Shannon Holmes and Yatoya Holmes were allowed to testify at the grand jury proceedings without petitioner being present.

## I. *Background*

The Michigan Court of Appeals summarized the facts of the case as follows:

> Defendant and Shannon Holmes were involved in an on-again, off-again relationship. When they were together, Holmes stayed with defendant. When they were separated, Holmes stayed with her sister, who lived down the street from defendant.
>
> On August 24, 2014, defendant and Holmes got into an argument that escalated into a physical fight. Holmes left defendant's home and went to her sister's house. Defendant followed her there and they continued to fight. Holmes's sister came to her door and told Holmes to come inside. Defendant then confronted Holmes's sister, who stepped inside her house and defendant followed her inside. As defendant was about to hit her, she moved and defendant struck her daughter instead. Defendant and his brother both testified that defendant stood on the sister's porch, but did not enter her house.
>
> On August 27, 2014, Holmes went out with a close friend, Ali Little. Holmes and Little testified that defendant followed them in his car and caught up to them at a red light, pulling next to the passenger side of the van where Holmes was seated. Defendant said threatening words and then pulled out a large semi-automatic handgun and pointed it at Holmes. She tried to duck into the back of the van, but defendant fired shots that broke the passenger's side window and a bullet struck Holmes in the knee. Little sped off and defendant followed while continuing to shoot at the van. Eventually Little took Holmes to the hospital where she had surgery to remove the bullet. Defendant testified that it was Little and Holmes who followed him in his car, and fired a gun at him.

*People v. Thornhill*, No. 326865, 326866, 2016 WL 4770121, at *1 (Mich. Ct. App. Sept. 13, 2016).

Following his conviction and sentence, petitioner filed a claim of appeal in the

Michigan Court of Appeals.  His appellate counsel filed a brief on appeal that raised two claims: (1) verdicts of guilty based upon insufficient evidence constituted a denial of due process, and (2) sentences imposed violated constitutional guarantees against cruel and/or unusual punishment.  Petitioner also filed a pro se supplemental brief on appeal that did not enumerate claims.  The Michigan Court of Appeals interpreted these briefs to raise two sets of additional claims:  (3) defendant was denied the effective assistance of counsel by his attorney's (a) failure to call all the witnesses listed on the defense witness list, (b) failure to personally inspect the victim's van, (c) failure to object to admission of the bullet recovered from the victim's knee, (d) failure to impeach the victim on inconsistencies between her trial testimony and prior statements, and (e) failure to use conflicts in the evidence during closing argument; and (4) the prosecutor committed misconduct when he (a) presented the false testimony of the victim, and (b) misstated the evidence during closing argument.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Thornhill*, 2016 WL 4770121.  Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims.  The Michigan Supreme Court remanded the case to the trial court for a sentencing inquiry under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), and otherwise denied the application.  *People v. Thornhill*, 894 N.W.2d 46 (Mich. 2017) (Table). On remand, the trial court determined that it would not have imposed a materially different sentence even if it had not been constrained by the previously mandatory sentencing guidelines. (ECF No. 9-16, PageID.1098.)

Petitioner filed a motion for relief from judgment and a supplemental brief in the trial court, raising what now form his thirty habeas claims. (ECF Nos. 9-15 and 9-17.)  The trial

court denied the motion for relief from judgment. The opinion denying the motion summarily rejected many of petitioner's claims on the merits, but it also found review of petitioner's new claims procedurally barred:

> [D]efendant's argument fail to meet the heavy burden under Mich. Ct. R. 6.508(D)(3)(a) good cause and actual prejudice. As a consequence of defendant's failure to show good cause or prejudice as required by the court rules, his motion for relief [from] judgment is found to be without merit. Rule 6.508(D)(3).

(ECF No. 9-18, PageID.1126.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals that raised the same claims. That court denied the application for leave to appeal "because defendant had failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 9-23, PageID.1567.) Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but leave to appeal was denied under Michigan Court Rule 6.508(D). (ECF No. 9-24, PageID.1662.)

## II. *Legal Standards*

The following standard applies in federal habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).   The Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Further, a state court's factual determinations are presumed to be correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. *Analysis*

### A. *Sufficiency of the Evidence Claims*

In his fifteenth and sixteenth habeas claims, petitioner assets that insufficient evidence was presented at trial to sustain his convictions. After reciting the applicable constitutional standard and the elements of the offenses of conviction, the Michigan Court of Appeals rejected the claim on the merits for the following reasons:

> Holmes and Little testified that they were followed by someone in a white Chrysler 300, the same type of car defendant drove. Holmes testified that when the vehicle pulled alongside Little's van, she recognized defendant as the driver. Holmes and defendant had an on-and-off relationship that was then in the off-again phase. Both Holmes and Little testified that the driver said something indicating that he had a relationship with Holmes and Little testified that he recognized the voice as that of defendant. Holmes testified that defendant was holding a gun and pointed it at her. Both she and Little testified that they heard the sound of a gun being fired. Little took off with defendant in pursuit and more shots were fired. Witnesses testified to seeing a fresh bullet hole in the passenger door of Little's van and a bullet was recovered from Holmes's knee. This evidence, if believed, was sufficient to prove that defendant carried or possessed a gun and used it to assault Holmes with the intent to murder her. While

7

defendant takes issue with Holmes's credibility, "[w]itness credibility and the weight accorded to evidence is a question for the jury," *People v. McGhee*, 268 Mich. App. 600, 624 (2005), and "[t]his Court will not interfere with the role of the trier of fact of determining the weight of the evidence or the credibility of witnesses." *Hill*, 257 Mich. App. at 141.

*  *  *

Defendant's challenge to the home-invasion charge centers on the meaning of the term "dwelling." The offense of first-degree home invasion requires that the defendant break and enter "a dwelling," or that he enter "a dwelling" without permission. MICH. COMP. LAWS § 750.110a(2). Defendant argues that he did not enter "a dwelling" because he only went through the main door of Holmes's sister's duplex into an entry hall that provided access to the two residential units, each of which had a separate entry door.

The rules of statutory construction require the courts to give effect to the Legislature's intent. This Court should first look to the specific statutory language to determine the intent of the Legislature, which is presumed to intend the meaning that the statute plainly expresses. *People v. Loper*, 299 Mich. App. 451, 464 (2013). "If the plain and ordinary meaning of the language is clear, judicial construction is not required or permitted." *Id*. "Where a statute supplies its own glossary, courts may not import any other interpretation but must apply the meaning of the terms as expressly defined." *People v. Schultz*, 246 Mich. App. 695, 703 (2001). The home-invasion statute defines the term "dwelling" as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." MICH. COMP. LAWS § 750.110a(1)(a). This Court recently held that in light of this definition, "the term 'dwelling' as used in MICH. COMP. LAWS § 750.110a(2) refers to the whole structure or shelter used as a place of residence," not to "the component parts of the structure." *People v. Bush*, [315 Mich. App. 237] (2016). Because the two units of the duplex were part of a single structure, the entry hall provided access to both units, and the family used both units as their place of residence, defendant entered "a dwelling" when he stepped inside the entry hall of the duplex. Thus, his sufficiency challenge in this regard is without merit.

8

*Thornhill*, 2016 WL 4770121, at *2-3.

This decision did not involve an unreasonable application of clearly established Supreme Court law.  The relevant standard for sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Habeas relief is warranted on a sufficiency of the evidence claim only if the state court's application of this standard was unreasonable.

With respect to the assault with intent to murder conviction, viewing the evidence in the light most favorable to the prosecution, the victim positively identified petitioner as the man who chased her in his car and then pointed a gun at the vehicle in which she was riding. She and the driver then heard  gunshots, and the victim was struck in the leg by a bullet. On this evidence, the jury was free to conclude that petitioner is the man who fired the shot and that he did so with the intent to murder the victim.  Petitioner had been in a romantic relationship with the victim, the relationship had ended, and petitioner had confronted her and fought with her a few days prior to the shooting.  The question whether to believe the victim's identification testimony and to determine petitioner's intent in firing the weapon were for the jury to decide. The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

With respect to the home invasion conviction, petitioner's argument is that the area where the confrontation occurred did not constitute a "dwelling" under state law, a required

element of the offense. The incident happened on the porch or just inside the threshold of the shooting victim's sister's duplex. The argument that the location did not constitute a dwelling is not an attack on the constitutional sufficiency of the evidence. Rather, it is an argument about the requirements of state law that was rejected by the Michigan Court of Appeals when it found that the location in the duplex where the fight occurred constituted part of a dwelling. What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, for which federal habeas review is not available. *See* Jenkins v. Dailey, 348 F. App'x 114, 119 (6th Cir. 2009); *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). This Court must defer to the Michigan Court of Appeals' construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). Petitioner's sufficiency of the evidence claim is therefore without merit.

**B.** *Sentencing Claims*

Four of petitioner's habeas claims challenge his sentence. His seventeenth and eighteenth claims challenge the proportionality of his sentences to the seriousness of his offenses, and his nineteenth and twentieth claims assert that his sentence was based on facts not found beyond a reasonable doubt by a jury, in violation of the Sixth Amendment.

With respect to the first set of claims, there is no constitutional requirement for strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (noting that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case").

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

Petitioner's sentence of 12-20 years for the assault with intent to murder conviction and 4-20 years for the home invasion conviction fell within the statutory maximums, and they are not grossly disproportionate to the crimes. Petitioner went to the victim's sister's dwelling and engaged in a physical altercation with her and her family members, leading him to pursue and shoot at her and another man in his car a few days later. By finding petitioner guilty of assault with intent to commit murder, the jury found that petitioner was trying to shoot and kill the victim. A lengthy sentence for this conduct is not grossly disproportionate to the severity of petitioner's crimes. These claims are without merit.

Petitioner next asserts that by applying Michigan's then-mandatory sentencing guidelines, and by imposing a sentence based on facts not proven beyond a reasonable doubt, the trial court violated his Sixth Amendment jury trial rights. The Michigan Supreme Court agreed, and it remanded the case to the trial court to determine whether it would have imposed the same sentence had the guidelines been advisory.

Any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013). *Alleyne* expanded the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the

offense must be submitted to the jury and proven beyond a reasonable doubt.

Subsequent to petitioner's sentencing proceeding, the Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violated the Sixth Amendment right to a jury trial. *See People v. Lockridge*, 498 Mich. 358 (2015). The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory. *Id*. at 391-92. The remedy under *Lockridge* is a remand for the trial court to determine if it would impose the same sentence even without the guidelines. *Id*. at 397. This remedy is based on the procedure adopted by the Second Circuit in *United States v. Crosby*, 397 F.3d 103, 117-18 (2nd Cir. 2005). *See Lockridge*, 498 Mich. at 395-96.

In the present case, the Michigan Supreme Court noted the Sixth Amendment violation and ordered the remand proceeding. (ECF No. 9-20, PageID.1328.) On remand, the trial court determined that it would not have imposed a different sentence had it not been constrained by the previously mandatory guidelines. (ECF No. 9-16, PageID.1098.) Because the state courts provided the relief to petitioner to which he was entitled, these two claims are moot. *See Hill v. Sheets*, 409 F. App'x 821, 824-25 (6th Cir. 2010). Petitioner is therefore not entitled to relief on his sentencing claims.

## C. *Ineffective Assistance of Counsel*

Petitioner raised a number of claims of ineffective assistance of trial counsel in his motion for relief from judgment. His twenty-second through twenty-fifth claims referred the trial court to his first through eighteenth claims and assert that his counsel was ineffective for failing to raise those issues at trial. To the extent that those claims were also raised in

12

petitioner's supplemental pro se brief filed during his direct appeal, they were not defaulted during state post-conviction review.  It is unclear whether petitioner is still asserting those claims in this action.  But out of an abundance of caution, the Court will assume that petitioner is still pressing the claims of ineffective assistance of counsel that he presented on direct review in his supplemental pro se brief.

The Michigan Court of Appeals rejected the pro se claims of ineffective assistance of counsel on the merits for the following reasons:

### 1. CALLING WITNESSES

Defendant first contends that counsel was ineffective for failing to call certain witnesses to testify. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Rockey*, 237 Mich. App. 74, 76-77 (1999) (citations omitted). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v. Julian*, 171 Mich. App. 153, 159 (1988) (footnote omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Kelly*, 186 Mich. App. 524, 526 (1990).

The lower court file in LC No. 14-008093-FH contains a document entitled "Defense Witnesses." The document includes the names of five people: defendant, defendant's brother Eric, Mia Parker, Alicia Cooke, and Shoton Merrit. Defense counsel called defendant and his brother to testify, but did not call the other named witnesses. Because there is nothing in the record to indicate what testimony Parker, Cooke, and Merrit would have offered if called, the record does not support a finding that counsel's failure to call them deprived defendant of a substantial defense.

### 2. INSPECTING LITTLE'S VAN

The record indicates that Little's van was impounded for processing. If it was processed, either the evidence technician did

not issue a report or the police officers assigned to the case made no attempt to obtain the technician's report. Defendant contends that counsel should have inspected the van himself.

It is counsel's duty to make an independent examination of the facts and circumstances involved in the matter, and to pursue all leads relevant to the issues. *People v. Grant*, 470 Mich. 477, 486-487 (KELLY, J.), 498 (TAYLOR, J.) (2004). The failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *McGhee*, 268 Mich. App. at 626. "In order to overcome the presumption of sound trial strategy, the defendant must show that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited the defendant." *People v. Bass* (On Rehearing), 223 Mich. App. 241, 253 (1997), vacated in part on other grounds 457 Mich. 866 (1998).

The testimony indicated that defendant fired multiple shots at Little's van. However, only one bullet hole was discovered in the vehicle and the bullet lodged in Holmes's knee, where it remained until it was surgically removed. The record thus indicates that the van did not contain any evidence pertinent to the August 27 incident, much less evidence favorable to the defense. Therefore, assuming that counsel did not inspect the van, the record does not support a finding that defendant was prejudiced by that omission.

## 3. ADMISSION OF THE BULLET

Defendant contends that the trial court erred in admitting the bullet into evidence because the prosecutor did not establish that the doctor who removed the bullet from Holmes's knee delivered it to a government official, and counsel was ineffective for failing to request a curative instruction regarding inadmissible evidence.

The record demonstrates that defense counsel repeatedly challenged the admissibility of the bullet. The trial court sustained counsel's initial objections on foundational grounds, but ultimately admitted the evidence. Defendant has not offered a cogent legal argument properly supported by legal authority regarding the propriety of the trial court's ruling, and thus his contention that the trial court erred in admitting the evidence is deemed abandoned. See *Payne*, 285 Mich. App. at 188; *People v. Watson*, 245 Mich. App. 572, 587 (2001). Absent a showing that the bullet was erroneously admitted into evidence, defendant's claim of

14

ineffective assistance of counsel must fail; counsel is not ineffective because he did not succeed in excluding evidence that was properly admitted. Further, because defendant has not shown that the evidence was inadmissible, he was not entitled to a "curative instruction" regarding testimony about inadmissible evidence, and "defense counsel is not ineffective for failing to pursue a futile motion." *People v. Brown*, 279 Mich. App. 116, 142 (2008).

### 4. IMPEACHING HOLMES

Defendant contends that counsel was ineffective because he did not impeach Holmes with certain inconsistencies between her trial testimony and prior statements.

"A witness can be impeached by the use of prior inconsistent statements." *People v. Patton*, 66 Mich. App. 118, 121 (1975). Decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich. App 8, 23 (1999); *People v. McFadden*, 159 Mich. App. 796, 800 (1987). Where counsel cross-examines and impeaches a witness, the failure to impeach her on all contradictory aspects of her prior statements and trial testimony does not render counsel ineffective. *Id*. However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *Lane*, 308 Mich. App. at 68.

The record shows that counsel impeached Holmes on certain points. For example, she testified that she planned to smoke marijuana when she met with Little, but apparently did not mention that fact before the grand jury. Also, Holmes testified that she referred to Little as her son, but told the police he was her cousin. Although Holmes initially testified that she did not believe defendant was driving the car that followed Little's van, she testified on cross-examination that she assumed it was defendant based on subsequent events. Counsel then got Holmes to admit that she told the grand jury that she "really didn't know" who was driving the car. Holmes's grand jury testimony and police report(s) are not in evidence, so the record does not show that they conflicted with her testimony in any other respects. Further, defendant has not shown that the other points of impeachment, such as where Holmes went during the August 24 foot chase and whether "she attempted to run inside of her home" would have

aided his defense that he followed Holmes around, but did not chase her and did not enter her sister's house. Thus, the record does not support a finding that counsel was ineffective.

## 5. CLOSING ARGUMENT

Defendant contends that counsel was ineffective for not pointing out instances where one witness's testimony conflicted with that of another witness, or with documentary evidence.

The decision whether to give a closing argument is a matter of trial strategy, *Ayres*, 239 Mich. App. at 23, as is the decision concerning what evidence to highlight during closing argument. *In re Rogers*, 160 Mich. App. 500, 505-506 (1987).

Defense counsel argued that the witnesses' accounts of the August 24 incident did not make sense and did not support a finding that defendant committed the crimes charged. For example, defendant had no reason to slap Holmes after she was kind enough to come downstairs and open the door for him and the 911 report that "Sister and boyfriend fighting outside the [location]" showed that "[t]here's no home invasion. There's nobody inside," a conclusion supported by defendant's brother's testimony and the fact that defendant was not arrested. Thus, it was more likely that defendant's account-that he followed Holmes down the street because she took his phone and that he returned home after he got it back-was what really happened. The crux of counsel's argument regarding the August 27 incident was that Holmes invented it to punish defendant for breaking up with her and, while her testimony was largely supported by Little, he was not a credible witness. While counsel did not deny that Holmes was shot, he argued that the evidence did not support a finding that defendant shot her. While he could have raised the matters defendant cites-such as whether Holmes lived with defendant or with her sister or both, the exact nature of Holmes and Little's relationship, whether Holmes's sister woke up on her own or whether her daughter woke her, and the time the bullet was recovered and the name of the doctor who removed it-they really were not germane to the argument presented. Defendant has not shown that counsel made a serious error by failing to raise these points.

*Thornhill*, 2016 WL 4770121, at *5-7.

This decision was reasonable.  In *Strickland v. Washington*, 466 U.S. 668 (1984),

16

the Supreme Court set out the familiar two-prong test for determining whether a counsel's assistance is so deficient that it requires a conviction to be set aside.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Id*. at 687.

"Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness' – specifically, 'reasonableness under prevailing professional norms.'" *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688).  The second prong of the test requires that the defendant affirmatively prove prejudice, meaning that his counsel's errors "must have 'actually had an adverse effect on [his] defense.'" *Id*. (quoting *Strickland*, 466 U.S. at 693).  The standard is especially difficult to meet in a federal habeas case, where the review that applies to *Strickland* claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable– a substantially higher threshold.'" *Id*. (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  For a state court's adjudication of a *Strickland* claim to be unreasonable under 28 U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it amounts to 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hendrix*, 893 F.3d at 922 (quoting *Harrington*, 562 U.S. at 103).

Petitioner claims that his counsel failed to call defense witnesses. As the state court noted, defense counsel called petitioner and petitioner's brother as defense witnesses. (ECF No. 9-11, PageID.750-759, 772-795.) Petitioner gave an innocent account of what occurred on August 24 at the duplex, and he testified to seeing the victim and hearing shots from an unknown source on the August 27. (*Id*.) His brother testified to what he saw on the 24th. (*Id*.) Petitioner claims that his counsel was ineffective for failing to call three additional witnesses who were listed on his witness list: Mia Parker, Alicia Cook, and Shoton Merritt. But he has provided no evidentiary proffer, either here or in state court, as to the contents of their expected testimony. As reasonably noted by the state court, the failure to proffer facts as to the missing witnesses' testimony is fatal to the claim. Conclusory allegations of ineffective assistance of counsel without any evidentiary support cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any such offer or any affidavit from these witnesses, petitioner has offered neither to the Michigan courts nor to this Court any evidence as to how these witnesses would have benefitted his defense. Without such proof, petitioner cannot establish that he was prejudiced by counsel's failure to call these witnesses at trial. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner next asserts that his counsel failed to examine or investigate Little's van. He suggests that an investigation might have shown that the bullet hole in the van did not match the victim's gunshot wound. Detroit Police Officer Marc Thompson testified that he responded to Sinai Grace Hospital after the shooting. (ECF No. 9-11, PageID.712-14.) The victim had already arrived in the van driven by Little. The officer took a photograph of the passenger door of the van which showed a bullet hole just below the mirror. (*Id*., PageID.716.)

The record does not indicate whether further processing of Little's van was performed. As with petitioner's previous allegation, however, he offers nothing other than speculation that further analysis of the van would have benefitted the defense. He fails to proffer any evidence or argument that it would have been possible to match (or exclude) the bullet recovered from the victim's knee with the hole in the van. He therefore cannot show that he was prejudiced by his counsel's failure to investigate the van. *See Workman*, 178 F.3d at 771.

Petitioner next asserts that his counsel failed to challenge the admission of the bullet recovered from the victim's leg. This allegation misstates the record. Defense counsel successfully challenged the admission of the bullet when it was first offered by the prosecutor. (ECF No. 9-11, PageID.705-08.) Casey York, a Detroit Police Officer, testified that on the date of the shooting he recovered a bullet from Sinai Grace Hospital in Detroit and tagged it for evidence. (ECF No. 9-11, PageID.701-04.) Based on this testimony, the court denied admission of the bullet. William Mulhouse, who was an officer employed at the hospital, then testified that he recovered a bullet from the operating room where it had been removed from a doctor, and he then gave it to Officer York. (Id., PageID.730-32, 40-41). After further argument, the court allowed the bullet to be admitted into evidence. (Id., PageID.704-708; 731-32, 40-41). The Michigan Court of Appeals found that the bullet was properly admitted under state law. Petitioner's counsel effectively challenged the admissibility of the bullet. He could do no more once the prosecutor ultimately established a proper foundation for admission of the exhibit.

Petitioner next claims that his counsel failed to adequately impeach the victim with her prior inconsistent statements. Again, the allegation is not supported by the record. Defense counsel cross-examined the victim regarding inconsistencies in her prior statements

19

with her trial testimony. (ECF No. 9-11, PageID.648-49 (whether the victim told the police everything that happened on the 24th); PageID.664 (whether she told the grand jury about her drug use); PageID.665 (whether she falsely told police Little was her cousin); PageID.667 (whether she told the grand jury she knew it was petitioner who was following Little's van); PageID.669 (whether the car looked different from petitioner's grandmother's car); PageID.680 (whether the victim followed-up with the police to obtain a PPO against petitioner following the shooting). Contrary to petitioner's claim, the record shows that defense counsel attempted to impeach the victim with statements she made to the police and to the grand jury. The record also shows that counsel was well prepared to cross-examine the victim and to present petitioner's defense that she was fabricating the allegations against him. The record allowed the state court to reasonably reject this allegation.

Finally, petitioner claims that his counsel failed during closing argument to point out all the discrepancies in the prosecution witnesses' statements and testimony. The state court found that defense counsel's closing argument effectively presented petitioner's defense to the jury. The record supports this conclusion. (See ECF No. 9-12, PageID.983-994.) Counsel argued that petitioner's and his brother's account of the incident on the 24th was more likely and logical than the one presented by the prosecution witnesses, noting the fact that no arrest was made when the police arrived. With respect to the shooting, counsel reasonably chose not to contest that the victim was shot, but he argued that the victim falsely blamed petitioner for the shooting in revenge for his breaking-off the relationship with her. This was a reasonably effective defense theory, and counsel ably presented it to the jury.

Petitioner has failed to demonstrate that the state court adjudication of the

ineffective assistance of counsel claims presented on direct appeal involved an unreasonable application of the *Strickland* standard or of the pertinent facts.  No habeas relief is warranted on these claims.

## D. *Prosecutorial Misconduct*

As with petitioner's claims of ineffective assistance of counsel, petitioner raised claims of prosecutorial misconduct both in his pro se supplement brief filed during his direct appeal and in his motion for relief from judgment.  Though his habeas petition purports to raise only the claims raised in his motion for relief from judgment, there is some overlap between the claims raised in the two state court proceedings.  Again, out of an abundance of caution, the Court assumes that petitioner is raising all the claims of prosecutorial misconduct that he raised on direct review in this action.

The Michigan Court of Appeals rejected the claims as follows:

### 1. FALSE TESTIMONY

Defendant contends that because Holmes's trial testimony conflicted with her police statement and grand jury testimony, it must have been false and thus the prosecutor committed misconduct by introducing it.

A "prosecutor may not knowingly use false testimony to obtain a conviction." *People v. Lester*, 232 Mich. App. 262, 277 (1998), overruled in part on other grounds by *People v. Chenault*, 495 Mich. 142, 146 (2014). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v. Aceval*, 282 Mich. App. 379, 389 (2009). However, "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony." *People v. Smith*, 498 Mich. 466, 476 (2015) (quotation marks and citation omitted). Rather, "it is the effect of the prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id.* (emphasis in original, quotation marks and citation

*Thornhill*, 2016 WL 4770121, at *7-8.

The state court reasonably adjudicated petitioner's claims of prosecutorial misconduct.  First, with respect to the alleged presentation of false evidence, a prosecutor deprives a defendant of a fair trial by knowingly presenting false testimony.  *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959).  "'The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

To succeed on a false-testimony claim, a defendant "must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Id*.  Mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor.  *Coe*, 161 F.3d at 343.  Additionally, the fact that a witness contradicts himself or changes her story does not establish perjury.  *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

As the state court reasonably found, petitioner points to nothing in the victim's testimony that is indisputably false, let alone anything that the prosecutor knew was false.  As discussed above, defense counsel used minor inconsistencies during cross-examination of the victim to impeach her credibility.  But they amounted to things such as whether she told the police the whole story, whether she used drugs, whether Little was her cousin or son, whether she knew it was petitioner who was following her and Little, and how she described the car that

followed her.   These are the sort of inconsistencies that commonly arise at trial, and they fall far short of demonstrating the knowing use of false evidence by the prosecutor.   The state court reasonably rejected the claim.

Next, petitioner asserts that the prosecutor committed misconduct during closing argument.   A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.   *Donnelly*, 416 U.S. at 643-45.   To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

The prosecutor's closing argument did not mischaracterize the evidence or use an improper basis to argue for conviction.   The prosecutor referred to Yatoya Holmes's testimony to support the home invasion charge. (ECF No. 9-12, PageID.970-71.)   She referred to the timing of the 911 calls from the victim and petitioner to assert that the victim's account should be believed. (Id., PageID.973.)   The prosecutor then referred to the victim and Little's testimony to support the assault charge. (Id., PageID.973-76, 980-81.)   The prosecutor also referred to petitioner's testimony, and she argued that his account was not plausible. (*Id.*,

24

PageID.982-83.) During rebuttal, the prosecutor asserted that the glass found in the street might have come from the victim's car. (*Id.*, PageID.998.) But contrary to petitioner's assertion, the prosecutor did not represent that the glass definitely was associated with the shooting, stating, "[the officer] just said I can't tell you whether it was or it wasn't. He was being honest with you. He couldn't tell you whether it was or it wasn't." (*Id.*) The arguments made regarding the bullet, bullet hole, and glass were all fair inferences to draw based on the evidence. *See Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir.1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir.1985) (prosecutor may argue permissible inferences from the evidence).

The state court;s adjudication of petitioner's prosecutorial misconduct claim did not involve an unreasonable application of the established Supreme Court standard or of the pertinent facts. No habeas relief is warranted as to this claim.

### E. *Procedurally Defaulted Claims*

Apart from the claims discussed above, which were presented to the state courts during petitioner's direct appeal, the remainder of petitioner's habeas claims were only presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent contends that these claims are procedurally defaulted because the trial court found that Petitioner failed to show "good cause" and "actual prejudice" for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

The Supreme Court has stated:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state

25

> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law,
> or demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  If a habeas petitioner fails to show cause for

his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v.

Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional

error has probably resulted in the conviction of one who is actually innocent, a federal court may

consider the constitutional claims presented even in the absence of a showing of cause for

procedural default.  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Further, "a procedural

default does not bar consideration of a federal claim on either direct or habeas review unless the

last state court rendering a judgment in the case clearly and expressly states that its judgment

rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court

judgment contains no reasoning, but simply affirms the conviction in a standard order, the

federal habeas court must look to the last reasoned state court judgment rejecting the federal

claim and apply a presumption that later unexplained orders upholding the judgment or rejecting

the same claim rested upon the same ground.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Supreme Court rejected petitioner's

post-conviction appeal on the ground that "the defendant has failed to meet the burden of

establishing entitlement to relief under MICH. CT. R. 6.508(D)." (ECF No. 9-24, PageID.1662.)

The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order

"because the defendant failed to establish that the trial court erred in denying the motion for

relief from judgment." (ECF No. 9-23, PageID.1567.)  These orders did not refer to subsection

26

(D)(3), nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals.  "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained. We must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [petitioner's] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

In rejecting petitioner's post-conviction claims, the Wayne Circuit Court indicated that petitioner was not entitled to relief because he failed to show cause and prejudice for failing to raise the issues on his direct appeal, as required by MCR 6.508(D)(3). (ECF No. 9-18, PageID.1126.)  Because the trial court denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), petitioner's claims are procedurally defaulted pursuant to that rule.  *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

Petitioner contends that his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective.  Petitioner has made no such showing.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

27

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment.  Appellate counsel filed a substantial appellate brief that raised two claims.  One claim ultimately led to the Michigan Supreme Court remanding the case to the trial court to determine whether resentencing was warranted.  Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising others was deficient or unreasonable.  Petitioner also filed his own supplemental pro se brief.  He has not explained why he omitted his additional claims from that brief.  Moreover, for the reasons stated by respondent in his answer to this petition, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review.  *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).  As they have been procedurally defaulted, no habeas relief is warranted as to these claims.

## V. *Conclusion*

For the reasons stated above,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not made a substantial showing that any of his constitutional rights have

been violated.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma

pauperis because any appeal in this matter would be frivolous.

s/Bernard A. Friedman
Bernard A. Friedman
Dated: October 30, 2020                    Senior United States District Judge
          Detroit, Michigan

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2020.

Andre Dolorean Thornhill, 956303              s/Johnetta M. Curry-Williams
CHIPPEWA CORRECTIONAL FACILITY                Case Manager
4269 W. M-80
KINCHELOE, MI 49784

29